Wardiaw, Ch.,
delivered the opinion of the Court.
The circuit decree, in this case, is placed on the grounds, 1st, *104 that the committee of a lunatic wife has not the privilege to avoid, under the Act of 1795, the gift, by a testator, to his illegitimate children, for the excess of the subject of gift beyond one-fourth of the clear value of his estate ; and 2d, that the only effect in this case of avoiding the gift, for such excess, would be to vest such excess in the plaintiff, who is a stranger to any trust.
• To establish the doctrine contained in the first ground might do no great mischief in this particular case, but in many conceivable cases, would produce great hardship and injustice. If a wife, having no separate estate, who had been driven to madness by the infidelity and brutality of her husband, were deprived, by his devise to his bastards, of the means of food and raiment, and left to depend upon the charity of the world to supply her destitution, could we,, possessing the reason and sensibilities of human nature,, venture to hold that the committee, under the supervision of this Court, might-not avail himself in her behalf of the provisions of the Act of 1795 ? In the parallel disability of infancy, it is the personal privilege of the infant to avail himself of the plea of infancy to avoid a contract, and yet his guardian may resort to this defence in the infant’s behalf. In the case of Hill vs. Hill, (3 Strob. Eq. 94,) this Court allowed the committee of a lunatic wife to assert her equity to a settlement out of her estate, and the present case is within the same7 principle. In Parnell vs. Parnell, (2 Phil. 158,) Sir Wm. Scott adjudged, that the committee of a lunatic may institute proceedings against the 'wife of the lunatic for adultery. It would be a great reproach to this Court, which professes in a peculiar manner to protect the rights of infants, married women, and lunatics, to add additional privation to loss of mind — the greatest affliction of Providence.
But this privilege, by the committee of a lunatic, to avoid gifts under the Act of 1795, must be exercised under the supervision of the Court, which will in a proper case control his election. In general, where it is doubtful whether the interests of the wife will be promoted by such intervention on the part of her com *105 mittee, the Court will direct the proper inquiry to be made by its proper officer. This inquiry will usually be confined to pecuniary interests. This Court does not determine questions according to the factitious dictates of a code of honor, or delicacy, but according to settled rules of law and honesty. Still, in the present case, many reasons might be found to induce the Court not to interfere in behalf of the wife, at least sna sponte. She is amply provided for; she was separated from her husband for thirty years before the execution of the will; in 1817, her father, interfering in her behalf, received from the husband twenty-four negroes for her sole and separate use, and covenanted in her behalf, and with her written approbation, that she should make no further claim upon the husband’s estate. It may be true that, in this State, under the decisions in Reid vs. Lamar, (1 Strob. Eq. 38,) and like cases, this covenant would impose no legal obligation on the wife, although it might be different in England, where the wife has the power to alien and incumber her separate estate. Yet it would hardly be consistent with good faith on the part of the wife, to disturb now a family arrangement, which has been executed for thirty years, the effect of which disturbance would be to throw heavy responsibilities on her father and trustee. It is unnecessary, however, to conclude any thing on this point, as the decree must be sustained on the other ground taken by the Chancellor.
We will not permit the committee here to avoid this gift to the testator’s illegitimate children, for the necessary result would be to vest the estate in the plaintiff. It has been strongly urged, that the alternative devise to the plaintiff, is a mere fraud upon the Act of 1795, and that this appears by the will. It is not pretended that there is any secret trust on the part of the plaintiff for the illegitimate children, and it is conceded, that the gift to the plaintiff makes him the absolute proprietor of the estate, unless the terms of the will create an express trust. The course of Courts of Equity, of late years, has been against the conversion of legatees into trustees, by vague expressions of wishes, or recommendation, in the disposition of the estate; (Sale vs. *106 Moore, 1 Sim. 534; Meredith vs. Heneage, Ib. 542 ; Wright vs. Atkyns, 1 Tur. & Russ. 143); and here, there is nothing more than a commendation of his children, by the testator, to the kindness and protection of his executor, without reference to the estate, and after a contingent gift thereof in fee. It is said, however, that the gift to the plaintiff, being on the _ contingency, expressed in the will, that the previous devise to the illegitimate children should be declared void by any Court of this State, authorized so to decide, affords indubitable evidence of the purpose of the testator, to evade the Act of 1795. It may be conceded, that such was the purpose of the testator, if, to keep the provisions of his will out of the operation of the Act can be called evasion; but surely it is not the province of the Court to usurp legislative power, and extend the Act to cases not within its enactments. The Act does not declare void, gifts to a stranger by an adulterer, or father of bastard children, and it may be well doubted, whether such abridgment of the jus disponendi, would ever have met with the favor of the legislature. Nor does the Act declare, even in cases where the gift is voidable, that the void excess shall go to the wife and children, only that the gift to the mistress or bastards, shall be void for the excess above one-fourth of the clear value of the donor’s estate. Its great object, is to brand and punish incontinence in particular cases, by restricting, to a limited extent, bounty to a mistress, or bastards. If, here, where the devise is not prohibited by the statute, we must nevertheless pronounce it void as an evasion, we in effect pronounce that an adulterer, or father of bastard children, having a wife, or lawful children, must give three-fourths of his estate to his wife or children.
It is objected to our conclusion, that we ratify a scheme by which the purpose of the Act of 1795 may be always defeated. But we do no more here, than we do in every case where we give construction to a statute. It is the duty of Judges to expound and not to make the law ; to declare what cases are within, and what without, legislative enactments; but not to include within these enactments, upon our notions of policy, the cases *107 omitted by the Legislature, whether by accident or design. It is for the Legislature and not for us to correct any supposed mischief, in the present state of the law, on this and all subjects.
In Wadlington v. Kenner, (MS.) and in two circuit opinions of Chancellor.Harper, one cited in the decree, and the other reported 1 Rich. Eq. 474, it has been decided that grand children could not interpose to avoid gifts under the bastardy Act, and we asquiesce in these decisions.
The fifth ground of appeal is sustained, and it is ordered that the costs of A. C. Spain, committee, and of Mary and Julia McRa, be paid by the plaintiff out of his testator’s estate.
In all other respects the decree is affirmed and the appeal dismissed.
Johnston and Dunkin, CC., concurred.